IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


SANDRA MARIE DESPINIS,

                        Plaintiff,

      v.

COMMISSIONER SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

No. 2:16-cv-01373-HZ

OPINION & ORDER

Tim Wilborn
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, NV 89137

        Attorney for Plaintiff

Janice E. Hebert
Assistant United States Attorney
U.S. Attorney's Office, District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Lars Nelson
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant


HERNÁNDEZ, District Judge:

Plaintiff Sandra Despinis brings this action for judicial review of the Commissioner's final decision denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Commissioner's decision is reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI on October 16, 2012, alleging disability as of August 7, 2012. Tr. 197-202.[1] Her application was denied initially and on reconsideration. Tr. 90, 108. On December 11, 2014, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 32. On January 29, 2015, the ALJ found Plaintiff not disabled. Tr. 24. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on bipolar disorder, PTSD, severe migraine headaches, ovarian cysts, lower back pain—sciatica, and pain in her right knee. Tr. 221. Plaintiff was 29 years-old at the time of the administrative hearing. Tr. 197. Plaintiff obtained a GED. Tr. 222.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

She worked as a cashier, crew member at a fast food restaurant, housekeeper, and shift manager at a video store. *Id.*

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot

perform past relevant work, the burden shifts to the Commissioner. In step five, the

Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden

and proves that the claimant is able to perform other work which exists in the national economy,

the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful

activity since October 16, 2012, the application date. Tr. 14. Next, at steps two and three, the

ALJ determined that Plaintiff has the following severe impairments: "migraine headaches;

sciatica; lumbar radiculopathy; popliteal cysts of the knees; benign paroxysmal positional

vertigo; bipolar disorder; posttraumatic stress disorder (PTSD); somatic disorder[.]" Tr. 14.

However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the

severity of a listed impairment. Tr. 15. At step four, the ALJ concluded that Plaintiff has the

residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), with the

following limitations:

> [Plaintiff] is limited to no more than frequent climbing of ramps and stairs. She is limited
> to no more than occasional climbing of ladders, ropes, or scaffolds. She is limited to no
> more than frequent stooping and crouching and no more than occasional balancing,
> kneeling, and crawling. The claimant must avoid moderate exposure to hazards, such as
> operational control of moving machinery, hazardous machinery, and unprotected heights.
> The claimant can understand and carry out simple instructions in a work environment
> with few, if any workplace changes. She is limited to only occasional interaction with the
> general public and coworkers.

Tr. 16. The ALJ concluded that Plaintiff is unable to perform any past relevant work. Tr. 22.

However, at step five the ALJ found that there are jobs that exist in significant numbers in the

national economy that Plaintiff can perform, such as "routing clerk," "inspector/hand packager,"

and "shipping and receiving weigher." Tr. 23. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 24.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by (1) failing to address whether Plaintiff's migraine headaches equal a listed impairment; (2) rejecting Plaintiff's testimony; (3) discounting the testimony of Plaintiff's treating physician's assistant and treating psychiatric mental health nurse

practitioner; and (4) discounting the testimony of lay witnesses. According to Plaintiff, because the ALJ erred, the RFC and hypothetical posed to the VE do not include all of her limitations. The Court finds that the ALJ erred in her failure to consider whether Plaintiff's migraine headaches equal a listed impairment and in discounting the testimony of treating Physician's Assistant Brasher. Thus, the Court remands the case to the ALJ for further proceedings.

## I.    Listing 11.03

The ALJ found that Plaintiff's migraines constituted a severe impairment, yet did not meet or medically equal a listed impairment. Tr. 14, 15. However, in her Step 3 discussion, the ALJ failed to mention Plaintiff's migraines. Plaintiff contends that the ALJ erred by failing to consider whether Plaintiff's migraine headaches, either by themselves or in combination with her other impairments, equaled 20 C.F.R. § 404, Subpart P, App. 1, Listing 11.03, as it existed at the time of the ALJ's decision. The Court agrees.

If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the "Listing of Impairments," then the claimant is presumed disabled at step three, and the ALJ need not make any specific finding as to his or her ability to perform past relevant work or any other jobs. 20 C.F.R. § 404.1520(d). An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so. *Id.* (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (holding that ALJ erred by failing to consider evidence of equivalence)). However, the Ninth Circuit has explained that, while an ALJ must discuss and evaluate the evidence that supports her conclusion, it is not required that she do so under the heading "Findings." *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013).

"Moreover, '[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.'" *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 683 (9th Cir. 2005)).

There is no medical listing for migraines. However, Defendant concedes that, at the time of the administrative hearing[2], Listing 11.03 was the appropriate listing for an equivalence analysis:

> 11.03 Epilepsy-nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. § 404, Subpart P, Appendix I, Listing 11.03 (as stated in December of 2014).

The ALJ was required to determine whether Plaintiff's migraines, alone or in combination with her other impairments, were medically equal in severity and duration to the criteria of Listing 11.03. 20 C.F.R. § 416.926. Defendant's own policy guidelines from the Program Office Manual System ("POMS")[3] explain how the agency determines medical equivalence, for unlisted impairments, by using the most closely analogous listed impairment. POMS DI 24505.015, https://secure.ssa.gov/poms.nsf/lnx/0424505015 (last accessed April 21,

---

[2] Listing 11.03 was removed from the neurological listings in 2016, after the ALJ's decision in this case. *See* Revised Medical Criteria for Evaluating Neurological Disorders, 81 Fed. Reg. 43048 (July 1, 2016), *available at* 2016 WL 3551949.

[3] Defendant objects to the Court's reliance on the POMS guidance. While the Court is aware that the POMS "does not have the force of law," it is deemed to be "persuasive authority" in the Ninth Circuit. *Hoff v. Colvin*, 667 F. App'x 638, 639 (9th Cir. 2016) (citing *Warre v. Comm'r of Social Sec. Admin.,* 439 F.3d 1001, 1005 (9th Cir. 2006)). The Court does not cite the POMS in order to impose judicially enforceable duties against the Agency, but rather as persuasive support for the decision to remand the case for further proceedings by the ALJ to determine whether Plaintiff meets Listing 11.03.

2017). The POMS guidelines provide the following example to illustrate how an ALJ makes an equivalence determination:

> A claimant has chronic migraine headaches for which she sees her treating doctor on a regular basis. Her symptoms include aura, alteration of awareness, and intense headache with throbbing and severe pain. She has nausea and photophobia and must lie down in a dark and quiet room for relief. Her headaches last anywhere from 4 to 72 hours and occur at least 2 times or more weekly. Due to all of her symptoms, she has difficulty performing her ADLs. The claimant takes medication as her doctor prescribes. The findings of the claimant's impairment are very similar to those of 11.02, Epilepsy, Dyscognitive seizures. Therefore, 11.02 is the most closely analogous listed impairment. Her findings are at least of equal medical significance as those of the most closely analogous listed impairment. Therefore, the claimant's impairment medically equals listing 11.02.D.1.

*Id.* The POMS guidance document was amended on March 29, 2017. The new version refers to Epilepsy as listing 11.02, instead of 11.03 as it appears in prior versions and as cited by the parties. However, the narrative and description of symptoms that would equal the Epilepsy listing are the same in the revised version as the older version.

Plaintiff contends that her migraine headaches equal Listing 11.03. She has chronic migraine headaches and her symptoms include aura, severe pain, throbbing, dizziness, nausea, phonophobia, and photophobia. Plaintiff testified that she has migraines approximately twice a week and that she suffers from debilitating pain through her spine and right leg. Tr. 45. When she is having a migraine, Plaintiff tries to sleep, although that often does not work. Tr. 46. She sits very still, usually with an ice pack on her head, in a dark and quiet place. *Id.* The headaches last, on average, three days. Tr. 47. Sometimes they last four or five days. *Id.*

On June 23, 2014, treating P.A. Brasher described the frequency of Plaintiff's headaches. Tr. 1337. Plaintiff had been experiencing migraines approximately 15 times per month. *Id.* However, the use of nortriptyline helped and, when P.A. Brasher made his assessment, Plaintiff was experiencing migraines that lasted 12-24 hours approximately 1-2 times per month. Tr.

1337-40. P.A. Brasher noted the following symptoms associated with Plaintiff's migraines: vertigo, nausea/vomiting, photophobia, phonophobia, and visual disturbances. Tr. 1337. He opined that Plaintiff's migraine symptoms were debilitating and that she would not be able to work when she was having a headache. Tr. 1339.

The migraine headache symptoms, as described by Plaintiff and P.A. Brasher, are extremely similar to the example provided in the POMS and the characteristics of Listing 11.03.[4] As stated above, in order to meet Listing 11.03, the typical seizure pattern must occur more than once weekly despite at least three months of treatment. Here, Plaintiff's testimony and P.A. Brasher's assessment indicate a pattern of migraines occurring 1-8 times a month, notwithstanding years of treatment. Furthermore, Plaintiff testified that her migraines interfere with her daily activities. Tr. 46-47. Therefore, there is a reasonable possibility that, if the ALJ had properly considered Plaintiff's migraines at Step 3, she would have found that they medically equaled Listing 11.03. *See, e.g.*, *Salazar v. Colvin*, No. 3:16-CV-05445-DWC, 2016 WL 6892394, at *3 (W.D. Wash. Nov. 23, 2016) (finding harmful error where ALJ failed to consider reasonable possibility that the claimant's migraines equaled Listing 11.03); *Edwards v. Colvin*, No. 3:14-CV-05338-KLS, 2014 WL 7156846, at *3 (W.D. Wash. Dec. 15, 2014) (same).

Defendant argues that the ALJ did not err at Step 3 because Plaintiff did not present evidence or argue to the ALJ that her migraines equaled Listing 11.03. Defendant cites to *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999), to argue that Plaintiff waived the right to raise the issue of medical equivalence because she did not preserve it by raising it at the administrative hearing.

---

[4] Plaintiff also asks the Court to take judicial notice of the Commissioner's December 15, 2009, Q&A 09-036. *See* Pl.'s Br. Ex 1, ECF 10-1. Defendant objects. Consideration of the Q&A would not alter this Court's analysis; therefore, it is not necessary for the Court to rule on whether to take judicial notice of the document.

In *Meanel,* the plaintiff argued that, contrary to the VE's testimony, the jobs the VE identified did not exist in sufficient numbers in the local economy. 172 F. 3d at 1115. In support, the plaintiff relied on new statistical evidence not provided to the ALJ at the hearing or to the Appeals Council. *Id.* The Ninth Circuit held that the plaintiff had not preserved this argument, explaining that "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Id.*

*Meanel* is distinguishable from this case because it concerned new evidence brought for the first time in the district court appeal. Here, Plaintiff does not introduce new evidence but, rather, claims the ALJ erred in her assessment of the existing evidence and its applicability to the Listings. Plaintiff could not have known at the time of the administrative hearing that the ALJ would fail to assess in the subsequent written opinion, as directed by agency guidelines, whether Plaintiff's migraine headaches equaled Listing 11.03. *See, e.g., Lemauga v. Berryhill,* No. 15-56611, 2017 WL 1208664, at *1 (9th Cir. Apr. 3, 2017) (claimant "should not be faulted for failing to make an argument before the ALJ that, at the time, was not pertinent"); *see also Davis v. Colvin*, No. 3:14-CV-00271-PK, 2015 WL 2218386, at *7 (D. Or. May 9, 2015) (finding *Meanel* inapplicable to ALJ's failure to account for limitations described in a medical opinion because the claimant could not have known of the ALJ's failure until after the hearing).

Alternatively, Defendant argues that any error by the ALJ at Step 3 was harmless because the ALJ subsequently considered Plaintiff's alleged migraine symptoms and the opinions of Dr. Westfall, Dr. Berner, and P.A. Brasher. However, as discussed below, the ALJ erred in his consideration of P.A. Brasher's opinion. Therefore, this Court cannot rely on the ALJ's analysis of P.A. Brasher's opinion to uphold her Step 3 finding. Similarly, the Court cannot rely on the

opinions of Drs. Westfall and Berner, because the ALJ did not correctly consider the implications of any conflict between these opinions and P.A. Brasher's opinion.

## II.     Plaintiff's Credibility

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting her testimony about her impairments and their limiting effects. In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. § 404.1529, 416.929. The first stage is a threshold test in which the claimant must present objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9h Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). If the record contains affirmative evidence of malingering, the ALJ need only provide specific and legitimate reasons for an adverse credibility finding. *Morgan*, 169 F.3d at 599.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim*, 763 F.3d at 1163; *Tommassetti*, 533 F.3d at 1039. In

addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan*, 169 F.3d at 600.

Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993); *see also Morgan*, 169 F.3d at 599.

Plaintiff testified that she was prompted to apply for disability because her migraines were so severe that she could not function. Tr. 45. Despite having sought treatment for her migraines for several years, "[t]here's no way to fix it" and she continues to suffer. *Id.* According to Plaintiff, she has migraines about twice a week. *Id.* Sometimes, injections of Imitrex help her symptoms but other times "it just knocks it down a notch or two so that [she's] not ready to put [her] head through a brick wall." Tr. 46. Her episodes last, on average, three days, although sometimes longer. Tr. 47.

Plaintiff also testified to physical impairments and limitations. Plaintiff explained that, "at times," she uses a cane to walk because she experiences pain in her hip that radiates all the way down her leg. Tr. 55. She also described back problems that make it painful to sit. Tr. 56. Plaintiff described lying on her side to keep the pressure off her nerve. *Id.* She testified that her fiancé does most of the household chores because she is unable to clean their apartment without being in so much pain that she cries. Tr. 57.

The ALJ summarized Plaintiff's testimony regarding her physical pain, migraines, and difficulty controlling her anger. Tr. 17. Following that summary, the ALJ concluded that

although Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 17.

Defendant points to six reasons that it contends the ALJ provided to discount Plaintiff's testimony: (1) disparities between the claimant's alleged severity and exam findings; (2) the clinical evidence of record does not support finding greater restriction; (3) other objective evidence casts doubt on the extent to which symptoms actually affected her; (4) there were subjective complaints of dizziness, but this appeared to improve with treatment; (5) mental health symptoms improved with treatment; and (6) Plaintiff's daily activities supported the RFC for light work. Def.'s Br. 21-22 (citing Tr. 17-19).

The Court agrees with Defendant's characterization of these reasons. While the ALJ's opinion could have more clearly stated each reason and how it served to discount Plaintiff's credibility, the Court is able to "reasonably discern" the ALJ's path. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015).

Plaintiff argues that the ALJ "failed to provide any indication of what symptom testimony she believed was not credible, stating only her unexplained conclusion and then discussing the medical evidence." Pl.'s Br. 18. The Court disagrees. The ALJ pointed to treatment records to highlight the disparity between Plaintiff's alleged limping gait and diminished strength with exam results showing a normal gait. Tr. 17. Similarly, the ALJ pointed to treatment notes regarding Plaintiff's normal mood, affect, cognition, memory, and eye contact, which contradicted her testimony about having trouble focusing and being around others. *Id.* The ALJ also pointed to records that suggested that Plaintiff's complaints of dizziness waned with

treatment. Tr. 19. Thus, Plaintiff's reliance on *Brown-Hunter* is unavailing. *See* 806 F.3d 487 (finding error where the ALJ stated only a general, nonspecific finding regarding credibility after simply reciting the medical evidence).

Not all of the reasons provided by the ALJ form a basis to discount Plaintiff's credibility. For example, the Court agrees with Plaintiff that the daily activities cited by the ALJ do not conflict with Plaintiff's testimony regarding limitations caused by her migraine headaches. They do, however, conflict with her testimony regarding her limitations due to back pain. *Compare* Tr. 19, 1382 (noting that Plaintiff can do basic chores, including sweeping, vacuuming, and doing small loads of laundry) *with* Tr. 57 (Plaintiff's testimony that she cannot vacuum the entire apartment or finish chores without crying).

In sum, even though Plaintiff's daily activities may not be a clear and convincing reason to discount Plaintiff's credibility regarding her migraines, the ALJ provided many other reasons, such as inconsistencies with the medical record and improvement with treatment. Because the reasons are supported by substantial evidence, this Court "may not engage in second-guessing." *Tommasetti*, 533 F.3d at 1039. Therefore, the Court concludes that the ALJ did not err in discounting Plaintiff's credibility.

## III.   Medical Opinions from "Other Sources"

Information from medical sources other than "acceptable medical sources" may provide insight into "the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, at *2. The ALJ must consider several factors when evaluating the opinion of such sources, including: (1) length of relationship and frequency of contact; (2) consistency of opinion with other evidence; (3) quality of source's explanation for opinion; (4)

any specialty or expertise related to impairment; and (5) any other factors tending to support or refute the opinion. *See* SSR 06-03p at *4-5; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Physician's assistants and nurse practitioners are considered "other sources." 20 C.F.R. § 404.1513(a) & (d)(1); *Molina*, 674 F.3d at 1111l; *Britton v. Colvin,* 787 F.3d 1011, 1013 (9th Cir. 2015) (per curiam). The ALJ may discount testimony from these "other sources" if the ALJ gives reasons germane to each witness for doing so. *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016).

A.  Physician's Assistant (P.A.) Brasher

P.A. Brasher filled out a "Headaches Medical Source Statement" in which he described the intensity of and limitations caused by plaintiff's migraine headaches. Tr. 1337. P.A. Brasher described Plaintiff's headaches as "moderate" and noted that they occur approximately 1-2 times per month and last 12-24 hours. *Id.* P.A. Brasher noted the following symptoms associated with Plaintiff's migraines: vertigo, nausea/vomiting, photophobia, phonophobia, and visual disturbances. Tr. 1337. P.A. Brasher wrote that Plaintiff's emotional factors contributed "somewhat" to the severity of Plaintiff's headaches and that she could only tolerate low-stress work because stress increased the duration and severity of her symptoms. Tr. 1339. He stated that Plaintiff's migraine headaches are a chronic condition. *Id.*

P.A. Brasher wrote that, when Plaintiff has a headache, she is precluded from performing "even basic work activities" because her headache symptoms are debilitating. *Id.* P.A. Brasher opined that Plaintiff would need unscheduled breaks during the workday for 2-4 hours, 1-2 times a week. Tr. 1339. Not counting breaks, Plaintiff was likely to be "off task" while at work 10% of the time. *Id.* Furthermore, P.A. Brasher opined that Plaintiff would be likely to be absent about 4 days a month due to her impairments. *Id.*

The final question of the 4-page "Headache Medical Source Statement" asked P.A. Brasher to describe any other limitations (beyond those caused by headaches) that would affect Plaintiff's ability to work at a regular job on a sustained basis. Tr. 1340. P.A. Brasher wrote: "[Plaintiff] has chronic low back pain with sciatic neuritis. She ambulates with a cane & she cannot lift, stoop, or bend with increased pain." *Id.*

The ALJ found P.A. Brasher's opinion to be unpersuasive because "the longitudinal record, including this provider's own treatment notes, did not show substantiating signs." Tr. 20. The ALJ pointed to evidence in the record that shows that, on multiple occasions, Plaintiff had no difficulty ambulating. *See, e.g.*, Tr. 1097 (P.A. Brasher's note from 6/17/13 that Plaintiff had normal gait and station); Tr. 1105 (same, on 6/5/13); Tr. 1109 (same on 6/3/13). The ALJ also pointed to a record from April of 2014 that showed a "[n]ormal MRI of the lumbar spine for age." Tr. 1214. Specifically, the "left paracentral disc protrusion component" at L4-5 was resolved and degenerative changes at the L4-5 and L5-S1 levels remained mild. Tr. 1214. The ALJ opined that P.A. Brasher likely relied heavily on Plaintiff's subjective complaints, which the ALJ did not find entirely credible. Tr. 20. Thus, the ALJ assigned "little weight" to P.A. Brasher's opinion. *Id.*

Even if the ALJ provided a germane reason to discount P.A. Brasher's opinion regarding Plaintiff's back pain and ability to ambulate, he failed to provide any reason to discount the opinion as to Plaintiff's migraine headaches. Thus, the ALJ improperly discounted P.A. Brasher's opinion.

The Ninth Circuit recently addressed a similar issue in *Dale v. Colvin*, 823 F.3d 941 (9th Cir. 2016). In *Dale*, the ALJ assigned "limited weight" to a nurse practitioner's testimony. The ALJ had divided the nurse practitioner's testimony into two parts: (1) exertional and postural

limitations and (2) manipulative and mental limitations. *Id.* at 945. The ALJ found that the nurse practitioner's evaluation of the claimant's exertional and postural limitations was not supported by her own treatment notes. *Id.* at 944. However, the ALJ gave no reason to discount the nurse practitioner's assessment of the claimant's manipulative and mental limitations. *Id.* The Ninth Circuit found that "an ALJ errs when he discounts an other source's *entire* testimony because of inconsistency with evidence in the record, when the ALJ has divided the testimony into distinct parts and determined that only one part of the testimony is inconsistent." *Id.* at 945.

The Ninth Circuit limited its holding to situations where the ALJ divides the testimony into distinct parts. *Id.* at n.3 ("We need not decide whether an ALJ who has *not* divided an other source's testimony into distinct parts may discount that witness' entire opinion when only some of the opinion is inconsistent with evidence in the record."). However, the Ninth Circuit noted that "at least one district court within our circuit has concluded that the ALJ may not dismiss an other source's entire opinion in such circumstances." *Id.* at n.3 (citing *McCann v. Colvin,* 111 F. Supp. 3d 1166, 1174 (W.D. Wash. 2015) ("When an ALJ discounts an opinion for being inconsistent with the objective evidence in the record, he must discount only those portions of the opinion that are actually inconsistent, not those parts which are uncontradicted.").

Admittedly, Plaintiff's case is not identical to *Dale* because the ALJ here did not divide the testimony into two clear parts. However, it is obvious from looking at P.A. Brasher's "Headache Medical Source Statement" that the testimony provided consisted of two separate parts. The first comprises three of the four pages of the statement and focuses exclusively on Plaintiff's headaches and the limitations they cause. *See* Tr. 1337-39. The second part consists of the response to just one discreet question in which P.A. Brasher describes "any other limitations" that would affect Plaintiff's ability to work. Tr. 1340. The ALJ's opinion only addressed reasons

to discount the second part of P.A. Brasher's opinion and did not provide any reason, much less a germane reason, to discount the first part. This error is particularly notable in this case because Plaintiff's allegation of disability centers on her headaches and P.A. Brasher's opinion focuses almost entirely on limitations caused by headaches.

Furthermore, the reason provided by the ALJ—inconsistency between P.A. Brasher's opinion and his own treatment notes—is not the kind of reason for discounting a source's testimony that applies to the entire testimony of the witness. *See Dale*, 823 F.3d at 944 (distinguishing between reasons such as bias, which would apply to the whole opinion, and inconsistency with objective evidence in the record, which only applies to that testimony which is inconsistent). In sum, as in *Dale*, this Court finds that the ALJ erred by discounting P.A. Brasher's entire testimony on the basis of reasoning that only applies to one portion of the testimony.

B. Treating Psychiatric Mental Health Nurse Practitioner (N.P.) Campo

N.P. Campo completed a "Medical Source Statement" on May 15, 2014. Tr. 940-43. The statement consisted primarily of checkboxes which N.P. Campo used to indicate Plaintiff's limitations in a variety of categories. *Id.*

N.P. Campo opined that Plaintiff's work performance and productivity would be precluded for 10% of an 8-hour day in the following areas: the ability to sustain an ordinary routine without special supervision, the ability to work in coordination with or proximity to others without being unduly distracted by them, and the ability to respond appropriately to changes in the work setting. *Id.* According to N.P. Campo, Plaintiff would be precluded for 20% of the time in her ability to do the following: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday

and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. *Id.* Finally, Plaintiff was most limited (precluded for 30% of the time) in the following areas: ability to interact appropriately with the general public, and ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. *Id.*

N.P. Campo opined that Plaintiff would be absent five days a month or more due to her mental impairments. Tr. 943. He also opined that she would be "off task" more than 30% of the time in a typical workweek. *Id.*

The ALJ gave partial weight to N.P. Campo's opinion. She credited the opinion to the extent it assessed moderate limitations in Plaintiff's ability to work in coordination with or proximity to others, and ability to respond appropriately to changes in the work setting. Tr. 21. However, the ALJ found that the remainder of the limitations assessed by N.P. Campo were not "fully substantiate[d]" by the mental health records. *Id.* According to the ALJ, treatment records "largely showed periodic complaints of increased mental symptoms with a number of reports indicating improvement with medication management." *Id.* Furthermore, the ALJ found no evidence to support N.P. Campo's conclusions regarding absenteeism or time Plaintiff would be off-task. *Id.* Finally, the ALJ noted that just months before the completion of N.P. Campo's written opinion, Plaintiff had indicated she had decreased anxiety and irritability due to treatment. *Id.*

Plaintiff argues that the ALJ erred in two ways. First, Plaintiff contends that there is no requirement that medical records "fully substantiate" medical source opinions. Second, Plaintiff argues that the ALJ fails to consider evidence of Plaintiff's improvement in context.

Plaintiff relies on *Rodriguez v. Bowen* for the proposition that an ALJ may not reject a medical source opinion because it is not fully supported by objective findings. 876 F.2d 759 (9th Cir. 1989). While *Rodriguez* addressed the weight properly afforded to a treating physician, not a nurse practitioner, the Court found that it was insufficient to reject the physician's opinion solely because "the opinion was not supported by the objective findings." *Id.* The *Rodriguez* court drew a distinction between the ALJ's erroneous analysis and the analysis upheld in *Young v. Heckler*, where the treating physician's opinion was not only unsupported by clinical findings, but was contradicted by the opinions of all of the other examining physicians. *Id.* (citing 803 F. 2d 963 (9th Cir. 1986)).

Defendant argues that N.P. Campo's opinion conflicts with those of Drs. Whitehead, Hennings, and Anderson. Therefore, Defendant contends that *Rodriguez* is distinguishable. However, the ALJ does not cite to conflicts between N.P. Campo's opinion and that of any other medical opinion in the record. While Defendant may be correct as to the ALJ's justification, this Court may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Bray*, 554 F.3d at 1225-26 (citing *Chenery Corp.*, 332 U.S. at 196).

On the other hand, the ALJ properly discounted N.P. Campo's opinion because the treatment records contained a number of reports indicating improvement with medication management and, thus, did not support the level of severity assessed by N.P. Campo. *See* Tr. 21. The ALJ cited to numerous treatment notes from N.P. Campo that support this conclusion. *Id.*

Plaintiff points to *Garrison v. Colvin*, in which "[t]he ALJ erred in concluding that a few short-lived periods of temporary improvement in Garrison's mental health symptoms undermined Garrison's testimony." 759 F.3d 995, 1018 (9th Cir. 2014). However, in *Garrison*, the Court found that "the ALJ improperly singled out a few periods of temporary well-being from a sustained period of impairment." *Id.* Plaintiff provides no evidence that the same error occurred here. While Plaintiff offers an alternative interpretation of the evidence, the ALJ's interpretation is rational and, therefore, must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (holding that variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and the Court may not substitute its judgment for that of the Commissioner). In sum, the ALJ provides a germane reason to assign only partial weight to N.P. Campo's opinion.

## IV.     Lay Witness Testimony

Plaintiff submitted lay witness testimony from Scott Ayres, her fiancé; Nathan Goreham, her roommate; and John Beach, her former supervisor. The ALJ dismissed all three statements, assigning them "little weight" because "[w]hile these statements may reflect their personal observations of the claimant to some degree, the record as a whole is inconsistent with the level of severity implicated by their accounts." Tr. 22. The ALJ cited to examples in the medical record where Plaintiff did not exhibit any gait abnormalities or deficits in strength, sensation, and reflexes. *Id.* In addition, the ALJ wrote that, "over the longitudinal period, the claimant more frequently presented with a normal mood and affect with no more than sporadic mention of appearing anxious, angry, and/or hostile. *Id.*

Lay testimony regarding a claimant's symptoms or how impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina*, 674 F.3d at 1114. However, "[a]n ALJ need only give germane reasons for discrediting the testimony of lay witnesses." *Bayliss*, 427 F.3d at 1218.

Plaintiff assumes, *arguendo*, that the ALJ provided sufficient reasons for rejecting the lay witness testimony as to most of Plaintiff's physical and mental limitations. Instead, Plaintiff argues that the ALJ erred to the extent he ignored the lay witnesses' testimony regarding Plaintiff's limitations resulting from her migraine headaches.

This Court's analysis of the ALJ's treatment of lay witness testimony differs from the analysis regarding P.A. Brasher. Where P.A. Brasher's opinion was almost entirely about Plaintiff's migraines, the ALJ erred in discounting the testimony due to a reason that only applied to a small portion of the opinion related to Plaintiff's back pain and ability to ambulate. Here, each of the lay witnesses presented significant testimony about Plaintiff's gait abnormalities, pain, and mental health that was not clearly separate from their testimony as to Plaintiff's migraines. *See e.g.*, Tr. 243 (Mr. Ayres' opinion that Plaintiff faces limitations from "vertigo, migraines, and PTSD w/bipolar"); Tr. 289 (Mr. Goreham's explaining that if Plaintiff "is having a bad migraine and pain day, she often has a very sour mood, which can be about 3-5 times a week"); Tr. 291 (Mr. Beach's observation that Plaintiff's "headaches and back were her main issues"). Therefore, the reasons that the ALJ provided for discounting the lay testimony, which Plaintiff essentially concedes are supported by substantial evidence, properly apply to the testimony as a whole, including any alleged limitations due to migraines. In sum, the ALJ provided germane reasons to discount the lay witness testimony.

## V.      Remand for Further Administrative Proceedings

Remand is appropriate in this case. The ALJ erred in her consideration of Listing 11.03 and P.A. Brasher's opinion. Such errors were not harmless because they potentially resulted in an RFC that did not account for absenteeism and other limitations caused by Plaintiff's migraine headaches.

In social security cases, remands may be for additional proceedings or for an award of benefits. *E.g., Garrison*, 759 F.3d at 1019 (explaining that if "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded [,]" but "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits") (internal quotation marks omitted); *Banks v. Colvin*, No. 3:14-CV-01306-HZ, 2015 WL 4628031, at *6 (D. Or. Aug. 3, 2015) (explaining that remanding for additional proceedings is the ordinary and "proper course," except in rare circumstances) (quoting *Treichler v. Comm'r*, 775 F.3d 1090, 1101 (9th Cir. 2014)).

To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler*, 775 F.3d at 1100 ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case

raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

The first part of the test is met here because, as explained above, the ALJ committed several legal errors in her analysis of Plaintiff's application for benefits. The next question is whether additional administrative proceedings would be helpful. In evaluating this issue, a court considers "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Treichler*, 775 F.3d at 1103–04.

Here, additional administrative proceedings are necessary. While the ALJ failed to properly evaluate the medical opinion of P.A. Brasher, this opinion remains in conflict with other medical opinions in the record. Furthermore, on remand, the ALJ must directly address the weight to assign Plaintiff's testimony regarding her migraine headaches. The ALJ's revised opinion may change her decision as to whether Plaintiff meets Listing 11.03.

At this point, the Court is unable to say whether or not the RFC accurately represents Plaintiff's abilities. In other words, Plaintiff's entitlement to benefits is far from "clear under the applicable legal rules." *See id.* Accordingly, a remand for additional proceedings is required to allow the ALJ to address the errors and ambiguities detailed above.

///

///

///

**CONCLUSION**

The Court reverses and remands the case for further administrative proceedings.

IT IS SO ORDERED.

Dated this _____10_____ day of _____May_____, 2017

_____

MARCO A. HERNÁNDEZ
United States District Judge